UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANR PIPELINE COMPANY, a foreign corporation, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 05 C 2717<br>) |
| .538 ACRES OF LAND, more or less, in Will County, Illinois; NORFOLK SOUTHERN CORPORATION, a foreign corporation; and REGIONAL TRANSPORTATION AUTHORITY COMMUTER RAIL DIVISION, d/b/a/ METRA, an Illinois municipal corporation, | ) Judge John W. Darrah<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, ANR Pipeline Company, filed a Complaint for Condemnation against Defendants, seeking condemnation of a permanent easement. Presently before the Court is ANR's Motion for Summary Judgment.

## UNDISPUTED FACTS

ANR constructs and operates over 10,000 miles of interstate natural gas pipeline, with a significant portion of those gas lines being located in Illinois. ANR transports natural gas through its interstate pipelines for delivery to local utilities. (Plaint.'s 56.1(a)(3) Statement ¶ 1). Norfolk Southern Corporation is the owner of certain real property located in Will County, Illinois, that is at issue in this case (the "RR Property"). (Id., ¶¶ 2, 5). Regional Transportation Authority Commuter Rail Division d/b/a/ METRA operates a commuter railroad line on the RR Property through a lease agreement with Norfolk. (Id., ¶ 3).

The Federal Power Commission ("FPC"), predecessor agency to the Federal Energy Regulatory Commission ("FERC"), issued a series of Certificates of Public Convenience and Necessity to Michigan Pipe Line Company, ANR's predecessor, to, among other things, construct, operate and maintain a 22" natural gas pipeline (the "22" Main Line"), a 30" loop pipeline (the "30" Loop") and a 42" loop pipeline (the "42" Loop") running through portions of Illinois and Wisconsin, including through the RR Property. (Plaint.'s 56.1(a)(3) Statement ¶ 6). ANR has condemned two permanent easement sections, one section being 75 feet wide for the operation and maintenance of the 22" Main Line and the 30" Loop and the other section being 70 feet wide for the operation and maintenance of the 42" Loop. (Id., ¶ 7). In general, the permanent easement allows ANR and its successors to operate, maintain, alter, repair, replace, move and remove the pipelines and related facilities on the RR Property. (Id., ¶ 8).

The legal descriptions of the proposed permanent easement areas are:

Easement for 42" Loop Pipeline

That part of the SW 1/4 of Section 9, Town 34 North, Range 11 East, Manhattan Township, Will County, Illinois, described as commencing at the Southwest corner of said section and proceeding thence South 89 degrees 55 minutes 15 seconds East 714.30 feet along the South line of said section; hence North 19 degrees 18 minutes 56 seconds East 1840.13 feet along the west line of the now or former Wabash Railroad property to the Point of Beginning; thence continuing along said line North 19 degrees 18 minutes 56 seconds East 72.10 feet; thence South 84 degrees 33 minutes 10 seconds East 156.95 feet along a line parallel with and 35 feet northerly of ANR Pipeline Company's 42 inch pipeline; thence South 29 degrees 22 minutes 20 seconds West 76.58 feet along the east line of the now or former Wabash Railroad property; thence N 84 degrees 33 minutes 10 seconds West 143.18 feet along a line parallel with and 35 feet southerly of ANR Pipeline Company's 42 inch pipeline to the Point of Beginning.

Easement for 22" Main Line and 30" Loop Pipelines

> That part of the SW 1/4 of Section 9, Town 34 North, Range 11 East, Manhattan Township, Will County, Illinois, described as commencing at the Southwest corner of said section and proceeding thence South 89 degrees 55 minutes 15 seconds East 714.30 feet along the South line of said section; thence North 19 degrees 18 minutes 56 seconds East 1951.63 feet along the west line of the now or former Wabash Railroad property to the Point of Beginning; thence continuing along said line North 19 degrees 18 minutes 56 seconds East 77.33 feet; thence South 84 degrees 46 minutes 19 seconds East 179.56 feet along a line parallel with and 25 feet northerly of ANR Pipeline Company's 22 inch pipeline; thence South 29 degrees 22 minutes 20 seconds West 82.19 feet along the east line of the now or former Wabash Railroad property; thence 84 degrees 46 minutes 19 seconds West 167.76 feet along a line parallel with and 50 feet southerly of ANR Pipeline Company's 22 inch pipeline to the Point of Beginning.

(Plaint.'s 56.1(a)(3) Statement ¶ 9).

In March 2005, ANR began corresponding with Defendants concerning new license agreements pertaining to the RR Property. In a March 11, 2005 correspondence, ANR included a draft easement agreement as part of the ongoing discussions with Defendants. (Cynthia L. Buchko Decl., Exh. A). On May 6, 2005, following an unsuccessful discussion between the parties concerning the RR Property, ANR filed its Complaint for Condemnation. In its Complaint for Condemnation, ANR alleged that Defendants had proposed new license agreements that ANR had rejected. Furthermore, ANR had proposed that the parties enter into easement agreements and had not received a response to its counter proposal. ANR sought permanent easements to allow ANR to "operate, maintain, alter, repair, replace, move and remove the pipelines and related facilities over, across, under and on the RR Property and allow ingress and egress at convenient locations." ANR alleged that Defendants "shall have the right to use and enjoy the surface of the permanent easement

3

areas, but shall not interfere with the use of the same by ANR for any of the purposes granted *in the easement documents*." (Emphasis added). At the time of the filing of the Complaint, "ANR ha[d] been unable to acquire by contract or negotiation the necessary permanent easements described [above]."

On August 31, 2005, ANR filed a Motion to Confirm Condemnation on the grounds that ANR had federal authority to condemn the property interests necessary to construct, operate and maintain the pipelines. (Plaint.'s 56.1(a)(3) Statement ¶ 10). ANR's motion alleged, in pertinent part, that ANR has "the authority to condemn the permanent easements sough irrespective of any issues raised by the defendants," that "[a]s a matter of law, defendants may not challenge ANR's authority to condemn or collaterally attack the right of ANR to construct, on the route or the location of, the pipelines as determined by the FERC," and that the "sole issue to be determined by the Court, therefore, is the amount of compensation due the defendants for the taking of the permanent easements on their property." The motion also stated that further support for the motion could be found in ANR's accompanying brief, the declarations attached to the memorandum, and the exhibits attached thereto. The declaration of Mark A. Handley, the Manager of Property Rights Services for ANR, was included in ANR's memorandum in support of its motion. Handley declared that ANR must acquire two permanent easement sections for the maintenance of the pipelines and included, as Exhibit A of the declaration, "[t]he proposed, draft easement." The draft easement was the same draft easement included in ANR's March 2005 correspondence to Defendants. (Id., ¶ 11; ANR's Memorandum in Support of Motion; Handley Decl., ¶ 8 and Exh. A). On November 3, 2005, this Court granted ANR's Motion to Confirm Condemnation, without objection by Defendants. (Plaint.'s 56.1(a)(3) Statement ¶ 12).

4

Defendants' expert witness, Michael J. Carbone, appraised the market value of ANR's permanent easement taking at $6,563.00. (Plaint.'s 56.1(a)(3) Statement ¶ 16).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

In light of the previous Order confirming ANR's condemnation authority, ANR seeks summary judgment as to the amount of compensation due to Defendants for the taking of the permanent easement on the RR Property. Defendants do not contest the $6,563.00 in compensation. Accordingly, summary judgment is granted as to the amount of compensation due Defendants in the amount of $6,563.00.

ANR also seeks an order vesting title in the permanent easement to ANR. Defendants object to the easement agreement, arguing that the easement agreement was never approved by the Court because it was not included in the Complaint for Condemnation and the Complaint for

5

Condemnation did not request approval of any easement agreement. ANR argues that Defendants waived any objection to the scope of ANR's easement taking.

Pursuant to Federal Rule of Civil Procedure 71A(e), a defendant (landowner) must raise all objections and defenses to a taking in its answer and a "defendant waives all defenses and objections not so presented." Fed. R. Civ. P. 71A(e); *See also Government of the Virgin Islands v. 19.623 Acres of Land*, 536 F.2d 566, 569 (3rd Cir. 1976) (*Virgin Islands*) (defendant waived defense that no legislative authorization for taking existed by not including defense in its answer). One of the main purposes of the waiver found in Rule 71A(e) is to simplify condemnation proceedings so that the rights of the parties may be promptly determined with assurance. *See Virgin Islands*, 536 F.2d at 569.

ANR's Complaint for Condemnation did not include a specific reference to ANR's proposed easement agreement, and the proposed easement agreement was not attached to the Complaint. However, ANR did allege that ANR had proposed an easement agreement and that Defendants had not responded to the proposal. This easement agreement is the same easement agreement attached to the Motion to Confirm Condemnation that ANR now seeks to record. Consistent with the easement agreement, ANR also alleged that it sought permanent easements to allow ANR "to operate, maintain, alter, repair, replace, move and remove the pipelines and related facilities over, across, under and on the RR Property and allow ingress and egress at convenient locations." Defendants did not file any defenses or objections to these allegations.

ANR's Motion to Confirm Condemnation did not technically seek approval of the proposed easement agreement. However, the motion stated that the *only* issue to be determined by the Court was the amount of compensation due the Defendants. More importantly, the memorandum in

support of the motion specifically stated that Defendants would "have the right, as they have for over 50 years, to use and enjoy the surface of the permanent easement areas, but shall not interfere with the use of the same by ANR for any of the purposes *granted in the easement document*," citing Handley's declaration and Exhibit A – the proposed easement agreement. (Emphasis added). Defendants did not make any objections to ANR's motion.

Based on the above, Defendants waived any objection to the easement agreement of which they had knowledge, as it was consistent with the Complaint for Condemnation and was specifically included in the unopposed Motion to Confirm Condemnation.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is granted. Judgment is entered in favor of Defendants in the amount of $6,563.00.

Dated: October 6, 2006

JOHN W. DARRAH
United States District Court Judge